IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| ERAN EVANS, | : | Case No: 1:20-cv-00041 |
| | : | |
| Plaintiff, | : | Judge Michael R. Barrett |
| | : | Magistrate Judge Stephanie K. Bowman |
| vs. | : | |
| | : | **DEFENDANTS' MOTION TO DISMISS** |
| THE HILLMAN GROUP, INC., et al. | : | **FOR FAILURE TO STATE A CLAIM** |
| | : | |
| Defendants. | : | |

Pursuant to Fed. R. Civ. P. 12(b)(6), Defendants The Hillman Group, Inc. ("Hillman") and Tia Schaeper (collectively "Defendants") respectfully move the Court for an Order dismissing Plaintiff Eran Evans' Complaint (Dkt. 1), with prejudice, for failure to state a claim. This Motion is supported by the following memorandum.

**MEMORANDUM**

**I. Introduction.**

Title VII and state employment-discrimination laws are not general civility codes, and courts examining claims under those statutes "do not act as a 'super personnel department,' overseeing and second-guessing employers' business decisions." *Romano v. Hudson City Sch. Dist.*, 772 Fed. Appx. 258, 267 (6th Cir. 2019) (quoting *Bender v. Hecht's Dept. Stores*, 455 F.3d 612, 626 (6th Cir. 2006) (quoting *Verniero v. Air Force Acad. Sch. Dist.*, 705 F.3d 388, 390 (10th Cir. 1983))); *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998). "The law does not . . . forbid [employers] from making decisions that others may disagree with." *Hartsel v. Keys*, 87 F.3d 795, 801 (6th Cir. 1996). It simply prohibits illegal discrimination.

While Plaintiff Eran Evans may believe it was *unfair* for Hillman to terminate her after four days of employment, the factual allegations in her Complaint do not plausibly suggest that

1

Hillman did so because of Evans' race. According to Evans, she was hired and terminated after four days by the same individual, Defendant Tia Schaeper, whom she proudly claims hired her the same day that she interviewed for the position. Moreover, the only events upon which she bases her claims are (1) Schaeper's alleged use of the word "girl" on three occasions when addressing Evans, which she speculates had racial connotations; (2) the fact that Evans' predecessor, a Caucasian male, had allegedly been placed on a performance improvement plan for some undisclosed reason prior to his resignation, which occurred over a year before Evans was hired; and (3) Evans' disagreement with Schaeper's alleged reason for terminating her: her belief that Evans appeared disengaged and unhappy with her job. Yet these factual allegations, even if true, do not give rise to a plausible claim of race discrimination under either federal or Ohio law. As such, this Court should dismiss Plaintiff Evans' Complaint with prejudice.

## II. Summary of Factual Allegations in the Complaint.[1]

### A. Hillman, through Schaeper, hires Evans.

Eran Evans, an African-American female, spent four days in July 2019 employed as a supply chain planner for Defendant Hillman. (Compl., Dkt. 1, at ¶ 21). Evans alleges Defendant Tia Schaeper, a Caucasian supply chain manager for Hillman and Evans' direct supervisor, hired Evans for the position on the same day she initially interviewed. (Id. at ¶ 24). Evans does not allege that this interview occurred over the phone or in any other manner that would have prevented Schaeper from knowing Evans was an African-American when she extended the offer of employment. (*See* Id.).

---

[1] While Defendants dispute many of the Complaint's allegations and deny all liability, Defendants take these allegations as true for the purposes of this Motion.

### B. Evans' first day (July 15, 2019).

When Evans arrived for her first day of work, Hillman HR Business Partner Mark Weber introduced her to her new coworkers and "reintroduced her to Schaeper." (Id. at ¶ 25). Evans spent much of her first day shadowing Schaeper as Schaeper prepared reports. (Id. at ¶ 26). As Evans was preparing to get food on her own around lunchtime, Schaeper stopped her, as she had planned to take Evans to lunch for her first day. (Id. at ¶ 28, 30). Schaeper asked Evans, "where are you going, girl?" (Id. at ¶ 28). Evans subjectively took Schaeper's use of the word "girl" to have racial connotations but did not comment on the word choice. (Id. at ¶ 29). Evans fails to describe how this word was derogatory; she only states that she "felt that Schaeper was playing into a stereotype in that question[.]" (Id.). Schaeper and five other employees then took Evans out to lunch, and Schaeper treated, as was tradition for supervisors to do on a subordinate's first day. (Id. at ¶ 30-32). Evans subjectively took this gesture to mean that Schaeper "felt forced to pay." (Id. at ¶ 33). This was because, according to Evans, Schaeper spent most of the lunch event on her phone and was particularly quiet that day. (Id. at ¶ 33-34).

After lunch, Evans continued to shadow Schaeper. Due to technological issues, Evans began receiving "multiple automated emails," and Schaeper, looking over Evans' shoulder, asked Evans to e-mail her in order to stop those e-mails. (Id. at ¶ 36, 38). Evans intended to send her e-mail to "Tia Schaeper," but instead accidentally addressed it to "Tina Bolser." (Id. at ¶ 37). Schaeper, witnessing this error, allegedly commented, "what is your problem, girl?" (Id. at ¶ 38). Evans again alleges that she "felt" the use of the word "girl" was "based around an African-American stereotype." (Id. at ¶ 38).

Evans then continued to review material Schaeper had provided her as part of her training. (Id. at ¶ 42). Sometime later, Schaeper quizzed Evans on what she had learned from those

3

materials, and positively commented that Evans got each answer correct and that she was "learning fast." (Id. at ¶ 43-44).

After this exchange, Schaeper and Evans discussed the individual who previously held Evans' role, who was a Caucasian male. (Id. at ¶ 45-46). Schaeper allegedly told Evans that the individual "had 'messed up' the job for a year and a half, and it got to the point of substantially interfering with Hillman's business dealings." (Id. at ¶ 45). According to Evans, the employee was placed on a performance improvement plan ("PIP"), but ultimately resigned. (Id. at ¶ 46, 48).

### C. Evans' second day (July 16, 2019).

Evans' second day at Hillman consisted of more training, shadowing Schaeper, and asking Schaeper questions about what she had learned. (Id. at ¶ 52, 54, 58-60). Evans also attended a meeting with Schaeper about supplier issues, and the two discussed how Evans' prior experience at Proctor & Gamble could help improve Hillman's supply chain processes. (Id. at ¶ 56-67).

### D. Evans' third day (July 17, 2019).

Evans' third day began with Schaeper arriving approximately twenty minutes late and being "uncharacteristically quiet." (Id. at ¶ 61). When Evans asked if anything was wrong, Schaeper said she was simply preparing for several upcoming meetings. (Id. at ¶ 63-64).

Evans and Schaeper then participated in a "category health meeting" call with Schaeper's supervisor and Hillman's Supply Chain Director, "Jason (LNU)," during which Schaeper and Jason had a disagreement regarding "the health of Schaeper's categories" and how they could be improved. (Id. at ¶ 65-70). Following the meeting, another supply chain employee, "Todd (LNU)," approached Evans and introduced himself, saying he would have done so earlier but that Evans and Schaeper appeared busy. (Id. at ¶ 73). Schaeper then stated that Evans "had been 'taking notes

4

like a good little girl,'" and Evans again took umbrage with Schaeper's use of the word "girl," which she "felt was derogatory," but said nothing in response. (Id. at ¶ 74).

Approximately twenty minutes before the end of Evans' shift, Schaeper asked Evans to shadow her again and watch her complete a report. (Id. at ¶ 77-78). Evans observed Schaeper by leaning over her, and looked at Schaeper's computer screen "with a look of serious intent to learn the process, nodding when Schaeper asked her if she understood, all the while absorbing the info so that she could create notes." (Id. at ¶ 79). Schaeper, however, allegedly perceived Evans as "look[ing] bored" and "like she didn't 'want to be [t]here,'" and expressed as much to Evans. (Id. at ¶ 80, 82). According to Evans, Schaeper told her it was "her job" to look engaged and that she expected Evans "to be fully smiling throughout the work day." (Id. at ¶ 86-87). Evans alleges that Schaeper "had not said anything similar to her Caucasian employees, who Evans had witnessed would have the same determined look on their faces while interacting with Schaeper." (Id. at ¶ 84). Evans does not identify these employees in her Complaint.

Evans asked Schaeper how her demeanor gave this impression, and what she could do to better show she was engaged and not bored. (Id. at ¶ 83, 88, 90). Schaeper responded by suggesting that Evans portray "an 'engaged-looking' face" and, given the back-and-forth, advised Evans that she "just d[idn't] know about this," gesturing toward Evans. Evans alleges that this "impl[ied] Evans' job was on the line because of the conversation." (Id. at ¶ 91-92). Schaeper then allegedly referenced Evans' demeanor during one of the meetings she attended earlier that day, and how she was not smiling, and also noted that Evans was on her phone texting during that meeting. (Id. at ¶ 94, 96). Evans responded that no one was smiling during that meeting, and that she was on the phone with her son to make sure he was okay after he told her he was injured. (Id. at ¶ 95-96). Evans left for the day immediately after this conversation. (Id. at ¶ 103).

5

### E. Evans' last day (July 18, 2019).

Evans met with Schaeper and HR Business Partner Mark Weber shortly after arriving for work on July 18, 2019. (Id. at ¶ 107). During that meeting, Schaeper told Evans that "it was clear that [she] was not happy [at Hillman]," and that her employment was being terminated. (Id. at ¶ 110, 121). When Evans asked what gave the impression that she was not happy, Schaeper cited, among other things, Evans "slouching in meetings," her head "drooping during her training," and "having her phone out during [a] meeting." (Id. at ¶ 112, 114). Before Evans left, she turned to Weber and said she "felt her termination was wrong and discriminatory." (Id. at ¶ 122).

### F. Procedural History and Summary of Evans' Causes of Action

On October 1, 2019, Evans filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") alleging race discrimination. (Dkt. 1-2, at PageID #21-30). The EEOC dismissed the Charge and issued a Notice of Rights to Evans on October 25, 2019, less than four weeks later. (Id., at PageID #19-20). Evans then filed the instant action on January 15, 2020, asserting three claims: (1) a race discrimination claim against both Defendants under Ohio Revised Code ("R.C.") § 4112.02 (Count I) (Compl., at ¶ 126-138); (2) a race discrimination claim under Title VII against Hillman only (Count II) (Id., at ¶ 139-151); and (3) a claim against Schaeper under R.C. 4112.02(J) for "Unlawful Aiding, Abetting, and Inciting of Discrimination" (Count III) (Id. at ¶ 152-157).

## III. Legal Argument.

### A. Rule 12(b)(6) standard.

In deciding a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the court must accept as true all the factual allegations contained in the complaint. *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007). The court need not, however, accept conclusions of law as true; while Rule 8 does not

6

require "detailed factual allegations," it does demand "more than an unadorned, the-Defendant-unlawfully-harmed-me accusation." *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly* at 555). Nor does a complaint suffice if it tenders "'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal* at 678 (quoting *Twombly* at 557).

The Sixth Circuit has held that the *Twombly/Iqbal* pleading standard "obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim *plausible*." *Weisbarth v. Geauga Park Dist.*, 499 F.3d 538, 541 (6th Cir. 2007) (emphasis in original) (quoting *Iqbal v. Hasty*, 490 F.3d 143, 157-58 (2d Cir. 2007)). A complaint should be dismissed when it fails to allege "enough facts to state a claim that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the Plaintiff pleads factual content that allows the court to draw the reasonable inference that the Defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly* at 556). This standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a Defendant has acted unlawfully." *Id*. (citing *Twombly* at 556). "Where a complaint pleads facts that are 'merely consistent with' a Defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id*. (quoting *Twombly* at 557); *see also Hillery v. Fifth Third Bank*, S.D. Ohio No. 2:08-cv-1045, 2009 U.S. Dist. LEXIS 39658, *5 (May 11, 2009) ("The factual allegations, assumed to be true, must do more than create speculation or suspicion of a legally cognizable cause of action; they must show entitlement to relief.").

### B. Plaintiff's Race Discrimination claims fail (Counts I and II).

Title VII makes it unlawful for an employer "to discharge any individual" on the basis of race. 42 U.S.C. §§ 2000e-2(a)(1). Similarly, R.C. 4112.02(A) makes it unlawful for an employer "to discriminate against [any] person with respect to hire, tenure, terms, conditions, or privileges of employment, or any other matter directly or indirectly related to employment" on the basis of race. The Ohio Supreme Court explains that "federal case law interpreting Title VII . . . is generally applicable to cases involving alleged violations of R.C. § 4112." *Kocak v. Cmty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 471-72 (6th Cir. 2005) (quoting *Plumbers & Steamfitters Joint Apprenticeship Comm. v. Ohio Civil Rights Comm'n*, 421 N.E.2d 128 (Ohio 1981)).

While a plaintiff does not need to plead facts establishing every element of a *prima facie* case of employment discrimination at the motion-to-dismiss stage, plaintiffs must still "allege sufficient 'factual content' from which a court, informed by its 'judicial experience and common sense,' could 'draw the reasonable inference'" that the employer discriminated against the employee. *Keys v. Humana*, 684 F.3d 605, 610 (6th Cir. 2012) (quoting *Iqbal*, 556 U.S. at 678, 679).

Evans' Complaint references three events which she claims demonstrate race discrimination: (1) Schaeper's use of the word "girl" on three occasions when speaking to Evans; (2) the fact that her predecessor was placed on a PIP following continued performance issues; and (3) her disagreement with Schaeper's perception of her as being "bored" and "unhappy" with her job at Hillman. None of these allegations permit Evans' claims to cross the threshold from "possible" to "plausible," which is fatal to her claims.

First, the Court cannot reasonably infer race discrimination from Schaeper's use of the term "girl." The term has no independent racial connotation,[2] and Evans offers no additional context that would elevate these otherwise harmless remarks to ones constituting circumstantial evidence of race discrimination. "Girl" is nothing more than an innocuous slang term used among women, similar to how males refer to each other as "man." (e.g., "Hey girl;" "Hey man"). All Evans offers is her subjective belief and speculation that the term must have been derogatory, which is insufficient to state a claim for discrimination. *Hillery*, 2009 U.S. Dist. LEXIS 39658 at *5.

Second, Evans' disparate treatment arguments also fall short. Evans argues that Hillman's decision to place her predecessor, a Caucasian male, on a PIP, whereas Evans was terminated without any prior progressive discipline, is evidence of discrimination. (Compl., at ¶ 49-51). In other words, Evans claims that she received less favorable treatment than a similarly-situated person outside her protected class.

The Sixth Circuit holds that comparators need to be identical "in all relevant respects," *DeBra v. JP Morgan Chase & Co.* 749 Fed. Appx. 331 (6th Cir. 2018), and considers several factors to determine whether individuals are "similarly situated" for Title VII purposes, including whether the individuals: (1) dealt with the same supervisor; (2) have been subject to the same standards; and (3) have **engaged in the same conduct** without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it. *Jackson v. VHS Detroit Receiving Hospital, Inc.*, 814 F.3d 769, 777 (6th Cir. 2016) (quoting *Mitchell v. Toledo Hosp.*, 964 F.2d 577 (6th Cir. 1992)). Evans' disparate treatment argument fails for the sole reason that she and her predecessor did not engage in the same conduct: while Hillman placed Evans' predecessor on a PIP due to poor performance, it terminated Evans for non-

---

[2] If anything, it is associated with gender, not race.

9

<u>performance</u> reasons, specifically Schaeper's perception that Evans had a negative attitude regarding her position and employment with Hillman and was disengaged. There is no allegation that Evans' predecessor exhibited the same behavior, precluding the two from being considered comparators for Title VII/R.C. 4112.02 purposes.

Finally, Evans' disagreement with Schaeper's perception of her work attitude is insufficient to create a plausible claim of race discrimination. This Court's only focus is whether Schaeper's decision to terminate Evans was racially motivated. Evans merely disagreeing with Schaper's decision does not establish this fact. Even assuming Evans was not bored or unhappy as she claims, terminating someone because they appear to exhibit this behavior is not discriminatory. This is especially true where, as here, <u>Schaeper was also the individual who hired Evans</u>. Had Schaeper harbored any discriminatory animus toward Evans because of her race, she could have easily denied Evans the position. Instead, she did the opposite. According to Evans, not only did Schaeper hire her, but she did so on the very same day Evans interviewed for the position. These facts further undermine any argument that her subsequent decision to terminate Evans was motivated by race, even when taking the Complaint's factual allegations as true.[3]

In the context of employment discrimination claims, the Court must be able to "reasonably infer" from a complaint's allegations that the employer unlawfully discriminated against the employee. Here, it is impossible to find that Evans has stated allegations that, if true, would show that Defendants terminated her because she is an African-American. Evans' speculation and

---

[3] Although generally applied in the summary judgment context, several courts have reasoned that the "same-actor inference" can warrant dismissal of a complaint for failure to state a claim when (1) the period of time between hiring and termination is limited; and (2) there are no other allegations from which the court can reasonably infer discrimination. *Rafferty v. Hempstead Union Free Sch. Dist.*, E.D. N.Y. No. CV 18-3321, 2019 U.S. Dist. LEXIS 143200, *46 (Aug. 21, 2019); *Bell v. Gordon*, S.D. N.Y. No. 05 Civ. 2163, 2005 U.S. Dist. LEXIS 18541, *11-12 (Aug. 30, 2005); *Springs v. Mayer Brown, LLP*, W.D.N.C. No. 3:09-cv-352, 2009 U.S. Dist. LEXIS 97081, *14-15 (Oct. 20, 2009); *Long v. Teradata Corp.*, E.D. Va. No. 1:12-cv-787, 2012 U.S. Dist. LEXIS 171950, *11-12 (Dec. 4, 2012).

conjecture are insufficient to carry that burden. As such, her Title VII and Ohio law race discrimination claims must be dismissed.

### C. Plaintiff's R.C. 4112.02(J) claim against Schaeper (Count III) fails because Schaeper cannot aid or abet herself.

Evans also asserts a claim against Defendant Schaeper under subsection (J) of R.C. 4112.02 for "Unlawful Aiding, Abetting, and Inciting of Discrimination." (Compl., at PageID #14). R.C. 4112.02(J) makes it an unlawful discriminatory practice for any "person" to:

> [(1)] aid, abet, incite, compel, or coerce the doing of any act declared by [R.C. 4112.02] to be an unlawful discriminatory practice, [(2)] to obstruct or prevent any person from complying with this chapter or any order issued under it, [(3)] or to attempt directly or indirectly to commit any act declared by this section to be an unlawful discriminatory practice.

"[T]he language of sub-section (J) bases a person's liability on actually 'facilitat[ing]' **another's** active violation of R.C. 4112.02." *Pittman v. Parillo*, Ohio App. 6th Dist. No. L-16-1140, 2017-Ohio-1477 (emphasis added) (citing *Cole v. Seafare Enters.*, Ohio App. 1st Dist. No. C-950157, 1996 Ohio App. LEXIS 440, *9 (Feb. 4, 1996)). *See also Denoewer v. UCO Indus.*, S.D. Ohio No. 2:17-cv-660, 2018 U.S. Dist. LEXIS 65250, *8 (Apr. 18, 2018) (noting that the "focus" for such a claim is on "whether a defendant knowingly gave substantial assistance **to someone** who performed wrongful conduct….") (emphasis added) (quoting *Aetna Cas. & Sur. Co. v. Leahy Const. Co.*, 219 F.3d 519 (6th Cir. 2000)). In other words, Defendant Schaeper cannot aid or abet herself; she must have engaged in acts intended to procure an unlawful discriminatory practice from Hillman. However, Evans does not offer <u>any</u> factual allegations of discriminatory conduct on the part of Hillman or any of its other employees; her only allegations of alleged misconduct are attributed to Schaeper. Because Schaeper cannot aid or abet her own alleged discriminatory conduct, this claim must also fail.

11

Further, even if the Court finds that Evans has properly asserted this claim against Schaeper, it must still fail because, as discussed above, her Complaint fails to allege facts plausibly showing any discriminatory conduct by either Schaeper *or* Hillman. Without any underlying action that constitutes an "unlawful discriminatory practice" under R.C. 4112.02, Evans cannot state a derivative aiding-and-abetting claim under subsection (J) as a matter of law.

## IV. Conclusion.

For all of the foregoing reasons, Defendants The Hillman Group, Inc. and Tia Schaeper respectfully request that the Court dismiss Plaintiff Eran Evans' Complaint with prejudice.

Respectfully submitted,

*/s/ Megan S. Glowacki*
Megan S. Glowacki (0086572)
Anthony P. McNamara (0093670)
THOMPSON HINE LLP
312 Walnut Street, Suite 1400
Cincinnati, Ohio 45202
Phone: (513) 352-6700
Fax: (513) 241-4771
Megan.Glowacki@ThompsonHine.com
Anthony.McNamara@ThompsonHine.com
*Attorneys for Defendants.*

## **CERTIFICATE OF SERVICE**

I certify that on April 16, 2020, I electronically filed the foregoing with the Clerk of the Court using the electronic filing system, which will send notification of such filing to counsel of record.

*/s/ Megan S. Glowacki*
Megan S. Glowacki
