**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION (CINCINNATI)**

| | | |
|---|---|---|
| ERAN EVANS | ) | CASE NO. 1:20-cv-00041 |
| | ) | |
| Plaintiff, | ) | JUDGE MICHAEL R. BARRETT |
| | ) | |
| v. | ) | Magistrate Judge Stephanie K. |
| | ) | Bowman |
| THE HILLMAN GROUP, INC., *et al*. | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

---

**PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM**

---

## I.   INTRODUCTION

A Caucasian supervisor calling an African American woman "girl" is just as racist as a Caucasian supervisor calling an African American male "boy." In their Motion to Dismiss for Failure to State a Claim ("Motion"), Defendants attempt to suppress the racial animosity that fuels this case and argue the word "girl" has no racial connotations, but this is simply untrue. (ECF No. 11). The racial animus present when a Caucasian supervisor calls an African American female "girl" is the same racial animus that drives Caucasian supervisors to call African American males "boy," and this Court should not be persuaded that racial animus is not present simply because of the gender of the victim.

Plaintiff Eran Evans has pled facts sufficient to establish claims for race discrimination (Count I and II) and unlawful aiding and abetting (Count III). In their Motion, Defendants, The Hillman Group, Inc ("Hillman") and Tia Schaeper (collectively "Defendants"), rely on summary judgment standards to argue Evans' claims fail. Defendants fail to demonstrate, however, when

1

accepting the facts in Evans' Complaint as true and drawing all inferences and conclusions in her

favor, that she can prove no set of facts that would entitle her to relief, and that Counts I, II and III

fail as a matter of <u>law</u>. Evans adequately and properly pled facts and elements sufficient to support

her claims, and as such, the Court should overrule Defendants' Motion in its entirety.

## II.     STATEMENT OF FACTS

On a Fed. Civ.R. 12(b)(6) motion, "all the factual allegations must be viewed in the light

most favorable to the plaintiff and the plaintiff must receive the benefit of all reasonable inferences

from the facts in the complaint." *Bachochin v. Shire, PLC*, No. 1:06-CV-486, 2008 WL 339810,

at *6 (S.D. Ohio Feb. 6, 2008). In this regard, Evans relies upon and refers this Court to the Facts

alleged in her Complaint. Viewing the facts in the proper light, Evans has properly plead facts that,

if proven, sufficiently support her claims.

## III.     FED. R. CIV. P. 12(b)(6) STANDARD

Under the Federal Rules, any pleading that states a claim for relief must contain a "short

and plain statement of the claim" showing that the pleader is entitled to such relief. *Parker v.

Strawser Constr., Inc.*, 307 F. Supp. 3d 744, 751 (S.D. Ohio 2018) (quoting Fed. R. Civ. P. 8(a)(2)).

To meet this standard, a party must allege sufficient facts to state a claim that is "plausible on its

face." *Id.*, quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d

929 (2007). A claim will be considered "plausible on its face" when a plaintiff sets forth "factual

content that allows the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged." *Id.*, quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173

L.Ed.2d 868 (2009).

In considering whether a complaint fails to state a claim upon which relief can be granted,

the Court must "construe the complaint in the light most favorable to the plaintiff, accept its

allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Id.*, quoting *Ohio*

*Police & Fire Pension Fund v. Standard & Poor's Fin. Servs. LLC*, 700 F.3d 829, 835 (6th Cir. 2012)). Evans is not required to prove her case in her pleadings. *Keys v. Humana, Inc.*, 684 F.3d 605, 609 (6th Cir. 2012). Indeed, such requirement would be "contrary to Supreme Court and Sixth Circuit precedent." *Id*. "Instead, claims brought under Title VII are analyzed under the ordinary notice pleading standards set forth in Rule 8(a)(2) of the Federal Rules of Civil Procedure." *Varner v. APG Media of Ohio, LLC*, No. 2:18-CV-706, 2019 WL 145542, at *4 (S.D. Ohio Jan. 9, 2019) (citing *Swierkiewicz v. Sorema*, 534 U.S. 506, 508, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002) and *Lindsay v. Yates*, 498 F.3d 434, 439 (6th Cir. 2007)).

If Evans does plead sufficient facts to support her claims, then the Court cannot dismiss those claims because the facts pleaded seem implausible. *Martin v. Insight Commc'ns Co., LP*, No. 2:10-CV-00537, 2011 WL 1233401, at *4 (S.D. Ohio Jan. 26, 2011), *report and recommendation adopted as modified sub nom. Martin v. Insight Commc'ns Co*., No. 2:10-CV-537, 2011 WL 1233374 (S.D. Ohio Mar. 28, 2011). "Provided that the plaintiff 'give[s] the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests,' the complaint <u>must be upheld</u>." *Lindsay*, 498 F.3d at 469 (quoting *Swierkiewicz*, 534 U.S. 506 at 512).

## IV. <u>EVANS ALLEGED FACTS SUFFICIENT TO ESTABLISH HER CLAIMS FOR RACE DISCRIMINATION (COUNTS I AND II)</u>

In her Complaint, Evans properly pled facts that, if true, support her claims for race discrimination in violation of Title VII and R.C. § 4112.02, and those facts, when viewed in the proper light, would allow her to recover on those claims.[1] In their Motion, Defendants argue Counts I and II should be dismissed because:

---

[1] The Ohio Supreme Court explained that "federal case law interpreting Title VII is generally applicable to cases involving alleged violations of R.C. § 4112." *Kocak v. Cmty. Health Partner of Ohio, Inc.,* 400 F.3d 466, 471—72 (6th Cir. 2005) (quoting *Plumbers & Steamfitters Joint Apprenticeship Comm. v. Ohio Civil Rights Comm'n*, 421 N.E.2d 128 (Ohio 1981)).

> [T]the only events upon which she bases her race discrimination claims are (1) Schaeper's alleged use of the word 'girl' on three occasions when addressing Evans, which she speculates had racial connotations; (2) the facts that Evans' predecessor, a Caucasian male, had allegedly been placed on a performance improvement plan for some undisclosed reason prior to his resignation, which occurred over a year before Evans was hired; and (3) Evans' disagreement with Schaper's alleged reason for terminating her: her belief that Evans appeared disengaged and unhappy with her job.

(ECF No. 11, PageID 65).

Defendants argue that Evans has failed to demonstrate racial animus as motivation for her termination. Specifically, "three events which [Evans] claims demonstrate race discrimination… [do not] permit Evans' claims to cross the threshold from 'possible' to 'plausible.'" (EFC. No. 11, PageID 71). The Court cannot dismiss for implausibility, though, and Defendants fail to allege that Evans has not met her burden under Fed. R. Civ. P. 8(a)(2), or that she has failed to put Defendants on notice of her claims against them and the grounds upon which they rest. Instead, they attempt to hold Evans to standards more appropriate for the summary judgment stage of litigation.

### A. Schaeper's Use of the Word "Girl" Has Racial Connotations.

Much like calling an African American male "boy," the use of the word "girl" by a Caucasian supervisor towards an African American female has racial connotations. *Ash v. Tyson Foods, Inc.*, 546 U.S. 454, 456 (2006); *see also Jackson v. Quanex Corp.*, 191 F.3d 647, 653 (6th Cir. 1999). In *Ash*, a Title VII retaliation case, the United States Supreme Court reversed and remanded the lower court's decision, which was based in part on a ruling that "the use of 'boy' alone is not evidence of discrimination." *Bailey v. USF Holland, Inc.*, 444 F. Supp. 2d 831, 854 (M.D. Tenn. 2006) (quoting *Ash v. Tyson Foods, Inc.*, 129 Fed. Appx. 529, 533 (11th Cir.2005)). "Far from holding that plaintiffs must make some showing above and beyond the use of the word 'boy' in a Title VII case, the Supreme Court held that the use of 'boy' alone can be evidence of

discrimination, depending on various factors such as 'context, inflection, tone of voice, local custom, and historical usage.'" *Id.*, quoting *Ash*, 126 S.Ct. at 1197.

There is a clear history that when the word "boy" is applied to African American males by Caucasian supervisors, paired with other discriminatory conduct, it demonstrates racial animus. *Id.* The same logic applies to African American females when referred to as "girl" by Caucasian supervisors and paired with other discriminatory conduct. *Tartt v. Tennessee Health Management, Inc.,* No. 17-cv- 2639-JMP-tmp, 2018 WL 1146641, *4 (W.D. Tenn., Feb. 9, 2018) (explaining the only reasonable basis for race discrimination in the complaint was the fact that a Caucasian manager referred to African American females as "girl"). In *Tartt*, the plaintiff ultimately failed to prove her *prima facie* case for retaliation under Title VII, but the *Tartt* Court's dicta indicates the phrase "girl" could be the basis of a race discrimination claim. *See id*.

Defendants argue that Evans' subjective belief and speculation that the term "girl" must have been derogatory is insufficient to state a claim for discrimination. (EFC. 11, PageID 72). Defendants cite *Hillery v. Fifth Third Bank*, S.D. Ohio No. 2:08-cv-1045, U.S. Dist. WL 1322304 (May 11, 2009) to support this proposition. However, *Hillery*, does not stand for this proposition at all. *Hillary* discusses the election of remedies in age discrimination claims under the ADA. Here, Schaeper calling Evans "girl," paired with the additional disparate treatment, demonstrates her termination was fueled by racial animus.

### B. Evans was Treated Worse Than Her Male Caucasian Predecessor, Thus Further Supporting Her Claims for Race Discrimination.

In her Complaint, Evans alleges – and Defendants do not dispute – that Evans' predecessor, a former Caucasian employee who performed poorly for nearly a year and a half, was given the opportunity to save his job prior to termination, whereas Evans was terminated after merely four days because Schaeper did not like her face.

As detailed in the Complaint, Defendants treated Evans differently than similarly situated employees nearly as soon as she started working for Defendants. Defendants argue that Evans' disparate treatment argument fails because, somehow, the Caucasian male that Evans was hired to replace is not directly comparable. (ECF No. 11, PageID 72). Evans and her Caucasian predecessor are directly comparable, and her Caucasian predecessor is a similarly situated employee.

Evans' Caucasian predecessor should be considered similarly situated under the factors identified by the Sixth Circuit in *Mitchell v. Toledo Hosp.*, 964 F.2d 577 (6th Cir. 1992). Defendants argue that because <u>one</u> of the factors does not exactly align with Evans' conduct that her predecessor is not similarly situated. Defendants, however, fail to consider that the *Mitchell* factors do not require a plaintiff to "demonstrate an exact correlation with the employee receiving more favorable treatment in order for the two to be considered 'similarly situated,' rather, the plaintiff and the employee with whom the plaintiff seeks to compare himself or herself must be similar in 'all of the *relevant* aspects.'" *Jackson v. VHS Detroit Receiving Hosp., Inc.,* 814 F.3d 769, 777 (6th Cir. 2016). The weight to be given to each *Mitchell* factor can vary depending upon the particular case. *Johnson v. Kroger Co.,* 319 F.3d 858, 867 (6th Cir. 2003). In other words, this is not an elemental test, it is a balancing test. When viewing the facts in the proper light, and taking all the pleaded facts as true, Evans' predecessor is a similarly situated employee.

Here, contrary to Defendants' argument, there can be no *sole reason* why Evans' similarly situated argument would fail as a matter of law. One factor under the *Mitchell* factors is not more important than the other factors and does not automatically disqualify an individual as "similarly situated." *Jackson,* 814 F.3d at 777. As detailed in her Complaint, Evans clearly meets at least two of the three *Mitchell* factors, and the factor in contention is more nebulous than Defendants

contend. For *that reason alone*, Evans should be allowed to continue into discovery to develop the facts of her case.

Defendants argue Evans and her predecessor were not engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it. (EFC No. 11, PageID 72-73). This argument is disingenuous. There are no mitigating circumstances that would explain why a Caucasian employee would be given a year and a half to improve his performance when he actively interfered with the company's ability to operate, while an African American employee would be fired after only four days for not smiling enough at work, except that Evans' termination was motivated by race discrimination.

At this stage, it is not required for Evans to prove the underlying facts of her claim. However, if this Court determines the merits of Evans' claims at this stage, she should be permitted to continue into discovery because she clearly meets two of the three *Mitchell* factors, and the second factor in contention does not outweigh the other two factors.

### C. The "Same Actor Inference" Does Not Apply at This Stage of the Litigation, and Defendants Are Relying on Summary Judgment Standards to Argue it Does.

The fact that Schaeper hired Evans and fired her only a few days later does not defeat Evans' claims for race discrimination. The Sixth Circuit rejected "the idea that a mandatory inference must be applied in favor of a summary-judgment movant whenever the claimant has been hired and fired by the same individual." *Wexler v. White's Fine Furniture, Inc.,* 317 F.3d 564, 573 (6th Cir. 2003). The *Wexler* court held that is insufficient to warrant summary judgement for the defendant if the employee has otherwise raised a genuine issue of material fact. *Id.* at 573—74. This, however, is not a summary judgment case, and Defendants offered <u>no</u> support that Evans' claims can be dismissed at this stage of the litigation based on the "same actor inference."

Defendants offer four cases to support their argument for dismissal, yet as Defendants point out in their own Motion, those cases are applied in the summary judgement context, relying on an entirely different standard than the Civ.R. 12(b) standard presently before this Court. Not only are those cases applying a different standard, but they also are not binding, as they all were heard in different jurisdictions outside of the Sixth Circuit or Ohio. Specifically, *Rafferty v. Hempstead Union Free Sch. Dist.,* E.D. N.Y. No. CV 18-3321, 2019 WL 5550261, and *Bell v. Gordon*, S.D. N.Y. No. 05 Civ. 2163, 2005 U.S. Dist. WL 2087822 are from the Southern District of New York. *Springs v. Mayer Brown, LLP,* W.D.N.C. No. 3:09-cv-352, 2009 U.S. Dist. WL 3461231 was heard in the Western District of North Caroline, and *Long v. Teradata Corp.,* E.D. Va. No. 1:12-cv-787, 2012 U.S. Dist. WL 6026441 was decided in the Eastern District of Virginia. These cases are not binding, nor are they persuasive for Defendants because they were applied in different jurisdictions at a different stage in the pleadings. Indeed, Defendants cited <u>no</u> Rule 12(b) cases where the court dismissed a Complaint under circumstances similar to the present action.

### D.  Despite Not Being Required to Do So, Plaintiff Can Establish Her *Prima Facie* Case for Race Discrimination.

Although Evans is not required to plead – let alone establish – the *prima facie* elements of her claims at this stage of the litigation, she has done so in her Complaint. In order to establish her *prima facie* case, Plaintiff must establish: (1) she is a member of a protected class; (2) she was qualified for the position; (3) Defendants subjected her to an adverse employment action; and (4) Defendants did not subject similarly situated persons outside the protected class to such adverse action.*" McDonnell Douglas Cop. v. Green*, 411 U.S. 502, 506 (1973). Here, Evans properly pled facts sufficient to satisfy each of these elements:

- At all times noted herein, Evans was qualified for her position with Hillman. (ECF No. 1, ¶ 18).

- Evans is African American, placing her in a protected class for her race. *Id.* at ¶ 20.

- Evans was the only African American employee in her area at Hillman. *Id.* at ¶ 22.

- Around lunch time, Evans started to get up to head out for food and Schaeper [Caucasian] asked, "where are you going, girl?" *Id.* at ¶ 28.

- Evans felt that Schaeper was playing into a stereotype in that question, specifically with the word "girl." *Id.* at ¶ 29.

- Schaeper, who was looking over Evans' shoulder, commented, "what is your problem, girl?" *Id.* at ¶ 38.

- Again, Evans felt the word choice to be based around an African American stereotype. *Id.* at ¶ 39.

- Schaeper mentioned the previous employee who was in Evans' new role, saying that the previous person had "messed up" the job for a year and a half, and it got to the point of substantially interfering with Hillman's business dealings. *Id.* at ¶ 45.

- Schaeper pulled out the previous employee's (who was notably a Caucasian male) performance improvement plan and showed it to Evans. *Id.* at ¶ 46.

- This timeline shows Hillman's disparate treatment in favor of its Caucasian employees. *Id.* at ¶ 49.

- The previous employee, who was apparently quire poor in performance, still had a year and a half to improve. *Id.* at ¶ 50.

- Schaeper only gave Evans a few days to show her skill, then used an obviously pretextual reason, Evans being seemingly unhappy at work, to termination Evans' employment after less than a week. This was disparate treatment. *Id.* at ¶ 51.

- Schaeper responded that Evans had been "taking notes like a good little girl." Again, Evans felt this derogatory. *Id.* at ¶ 74.

- Schaeper stopped mid-sentence and asked if Evans was okay. Evans confirmed she was fine, and Schaeper commented that Evans "looked bored." *Id.* at ¶ 79-80.

- Schaeper then commented that Evans looked like she didn't "want to be there." *Id*. at ¶ 82.

- Schaeper didn't explain how Evans' face made her look bored. Schaeper had not said anything similar to her Caucasian employees, who Evans had witnessed would have the same determined look on their faces while interacting with Schaeper. *Id.* at ¶ 84.

- Evans then realized that Schaeper was serious about the comments and asked if Schaeper expected her to be fully smiling throughout the workday. Schaeper said that that was exactly what she expected. *Id.* at ¶ 87.

- Disparately, Schaeper did not make these comments to her Caucasian subordinates. *Id.* at ¶ 89.

- Evans asked Schaeper what face she should make to show she was engaged in the training. *Id.* at ¶ 90.

- Schaeper responded, "If you're going to be like this, I just don't know about this!" while gesturing toward Evans, implying that Evans' job was on the line because of the conversation. *Id.* at ¶ 92.

- Evans asked where this interaction was coming from, and Schaeper said it came from Evans' face. *Id.* at ¶ 100.

- Evans left, feeling quite confused and wondering what made her face different than all the other employees. *Id.* at ¶ 103.

- Defendants' termination of Evans was an adverse employment action against her. *Id.* at ¶ 123.

- Defendants' purported reason for Evans' termination is pretext for racial discrimination. *Id.* at ¶ 124.

- Defendants treated Evans differently than other similarly situated employees based upon her race. *Id.* at ¶ 129.

- Defendants actually terminated Evans' employment due to her race. *Id.* at ¶ 132.

- Defendants violated Title VII and R.C. § 4112.02, *et seq.*, by terminating Evans because of her race on or about July 18, 2019. *Id.* at ¶¶ 133, 146.

- Defendants violated Title VII, R.C. § 4112.02 and R.C. § 4122.99 by treating Evans differently from other similarly situated employees outside her protected class. *Id.* at ¶¶ 134, 147.

- Defendants violated Title VII, R.C. § 4112.02 and R.C. § 4122.99 by applying their employment policies in a disparate manner based on Evans' race. *Id.* at ¶¶ 135, 148.

- Defendants violated Title VII, R.C. § 4112.02 and R.C. § 4122.99 by applying their disciplinary policies in a disparate manner based on Evans' race. *Id.* at ¶¶ 136, 149.

As expressly alleged in her Complaint, Evans is in a protected class because she is African

American, she was qualified for her position at Hillman, Defendants subjected her to an adverse

10

employment action, and Defendants did not subject similarly situated persons outside her protected class to such treatment or adverse action. Thus, she pled facts and elements that, viewed in the proper light, would entitle her to relief on her race discrimination claims.

**V.     EVANS ALLEGED FACTS SUFFICIENT TO ESTABLISH HER CLAIM FOR UNLAWFUL AIDING AND ABETTING AGAINST DEFENDANT SCHAEPER (COUNT III)**

Defendants contend that Evans' claim for unlawful aiding, abetting, and inciting of discrimination must fail because "Schaeper cannot aid or abet herself." (EFC No. 11, PageID 74). This is an incorrect application of the law. "R.C. § 4112.02(J) applies to 'any person' who violates [R.C.§ 4112 *et seq.*]." *Vandiver v. Morgan Adhesive Co.* 126 Ohio App.3d 634, 642 (9th Dist. Ct. App. 1998) (Reversing the trial court's dismissal of Plaintiff's unlawful aiding and abetting claim against a supervisor). Additionally, "R.C. § 4112.01(A)(1) defines 'person' as 'one or more individuals' and specifically includes both a 'manager' and an 'employee.'" *Id.* Schaeper is undisputedly a manager for Hillman, and therefore, she falls under the category "any person who violates R.C. § 4112."

In her Complaint, Plaintiff alleged:

- Defendant Schaeper is and/or was an employee of Hillman. (EFC No.1, ¶ 5).

- Defendant Schaeper did, and at all times hereinafter mentioned, acted directly or indirectly in the interest of Hillman and/or within the scope of her employment at Hillman. *Id.* at ¶ 6.

- At all times referenced herein, Defendant Schaeper supervised and/or controlled Evans' employment at Hillman. *Id.* at ¶ 7.

- At all times referenced herein, Defendant Schaeper was Evans' employer within the meaning of 42 U.S.C. § 1211 and R.C. § 4112.01(A)(2). *Id.* at ¶ 8.

- Schaeper aided, abetted, incited, coerced, and/or compelled Hillman's discriminatory termination of Plaintiff. *Id.* at ¶ 154.

"To be held liable under § 4112.02, an individual defendant must be "involved in or actually [have] made the decision to [discriminate or] retaliate against [the employee]." *Oster v. Huntington Bancshares Inc.,* 2:15-CV-2740, 2017 WL 2215462 at *22 (S.D. Ohio May 19, 2017). Evans' allegations that Schaeper made the decision to discriminate against Evans because of her race is at the heart of Plaintiff's Complaint. Schaeper's conduct, in totality, as alleged in Plaintiff's Complaint, demonstrates Schaeper's repeated, knowing decision to violate § 4112. When viewing the facts and allegations in her Complaint in the proper light, Evans has sufficiently stated claims for unlawful aiding and abetting against Schaeper. Accordingly, this Court should deny Defendants' Motion as to Count III.

## VI. CONCLUSION

In her Complaint, Eran Evans alleged facts sufficient to support her claims for race discrimination and unlawful aiding and abetting. Evans is not required at this stage of the litigation to prove the underlying basis of her claims; she merely needs to allege facts and elements that, when viewed in the proper light, would entitle her to relief and place Defendants on notice of her claims. She has done that, and thus, her claims are not subject to dismissal pursuant to Fed. R. Civ. P. 12(b)(6).

For the foregoing reasons, Plaintiff respectfully requests this Court to deny Defendants' Motion in its entirety.

Respectfully submitted,

/s/ Matthew G. Bruce
Matthew G. Bruce (0083769)
Katie E. Epperson (0098997)
THE SPITZ LAW FIRM, LLC
8354 Princeton-Glendale Road, Ste. 203
West Chester, OH 45069
Phone: (216) 291-4744
Fax: (216) 291-5744
Email: Matthew.Bruce@SpitzLawFirm.com

*Attorneys for Plaintiff Eran Evans*

## **CERTIFICATE OF SERVICE**

I hereby certify that on May 7, 2020, a copy of the foregoing was served via electronic mail

on the following individuals:

Megan S. Glowacki, Esq.
Anthony P. McNamera, Esq.
THOMPSON HINE LLP
312 Walnut Street, Suite 1400
Cincinnati, Ohio 45202
Megan.Glowacki@ThompsonHine.com
Anthony.McNamara@ThompsonHine.com

*Attorneys for Defendant*

/s/ Matthew G. Bruce
Matthew G. Bruce (0083769)