UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

Eran Evans,

    Plaintiff,

    v.                                 Case No. 1:20cv41

The Hillman Group, Inc., *et al*.,       Judge Michael R. Barrett

    Defendants.

**OPINION & ORDER**

This matter is before the Court upon Defendants' Motion to Dismiss. (Doc. 11). Plaintiff has filed a Response in Opposition (Doc. 14) and Defendants filed a Reply (Doc. 15).

**I.    BACKGROUND**

Plaintiff Eran Evans is a supply chain planner formerly employed by Defendant Hillman Group. Hillman Group is a hardware distributor headquartered in Cincinnati, Ohio. Defendant Tia Schaeper is a supply chain manager for Hillman, and was Evans's direct supervisor when she worked for Hillman.

According to the Complaint, in July 2019, Schaeper, who is Caucasian, interviewed Evans, who is African-American, for a supply chain planner position. Evans was hired the same day Schaeper interviewed her. Compl., Doc. 1 at ¶¶ 20, 24.

On July 15, Evans began her first day of work with relatively little fanfare, shadowing Schaeper as Schaeper prepared reports. Id. at ¶ 24. At lunchtime, Evans prepared to leave to get food. Id. at ¶ 30. Schaeper stopped her, having planned to take Evans out to lunch for her first day. Id. When stopping her, Schaeper asked Evans,

"Where are you going, girl?" Id. at ¶ 28. Evans apparently believed Schaeper's usage of the word "girl" to be derogatory, with certain racial connotations. Id. at ¶ 29. Schaeper and five other employees took Evans out to lunch, and Schaeper paid for Evans, saying it was "tradition" to do so. Id. at ¶ 30-32. Evans believed Schaeper felt "forced to pay," particularly because Schaeper had spent most of the lunch on her phone, and had been relatively quiet. Id. at ¶ 33-34.

After lunch, Evans began to have some technological issues with automated emails. Id. at ¶ 36. Schaeper attempted to help Evans resolve the problem and asked Evans to send her an email. Id. at ¶ 37. Evans accidentally typed the wrong name into the email and Schaeper, who was looking over Evans's shoulder commented, "What is your problem, girl?" Id. at ¶ 38. As she had earlier, Evans felt that Schaeper's use of the word "girl" was based in "an African-American stereotype." Id. at ¶ 39.

Evans proceeded to work and review training materials for the rest of the afternoon, with Schaeper quizzing her on the training materials, and commenting that Evans was "learning fast." Id. at ¶ 43-44. Schaeper also told Evans about Evans's predecessor, a Caucasian man who had apparently "messed up" the job for a year and a half, to the point where it "substantially interfered" with Hillman's business dealings. Id. at ¶ 45. The predecessor was placed on a performance improvement plan before he eventually resigned. Id. at ¶ 46, 48. Schaeper noted that she was happy that he had resigned, and showed Evans the performance improvement plan. Id.

Evans's second day at Hillman was relatively uneventful. On Evans's third day, Schaeper arrived twenty minutes late and was relatively quiet. Id. at ¶ 61. Evans asked Schaeper if anything was wrong, and Schaeper explained that she was just preparing for

upcoming meetings. Id. at ¶ 63-64.

Evans and Schaeper participated in a "category health meeting" call with Hillman's supply chain director, "Jason," a Caucasian man who was Schaeper's supervisor. Id. at ¶ 65. Schaeper and Jason had a somewhat uncomfortable disagreement regarding the health of Schaeper's categories and possible improvements. Id. at ¶ 65-70. After the meeting, another employee introduced himself to Evans, commenting that she and Schaeper had appeared busy earlier. Id. at ¶ 73. Schaeper said that Evans had been "taking notes like a good little girl," which Evans once again felt was derogatory, particularly because Evans was older than Schaeper. Id. at ¶ 74-75.

Toward the end of Evans's third day, Schaeper asked Evans to shadow her while she completed a report. Id. at ¶ 77-78. Evans leaned over to look at Schaeper's computer screen, "with a look of serious intent to learn the process," and nodding when Schaeper asked if she understood. Id. at ¶ 78. Schaeper stopped mid-sentence, asking if Evans was alright, and commenting that Evans "looked bored" and like she did not "want to be [t]here." Id. at ¶ 79-82. Schaeper warned Evans that she needed to be cognizant of how her face appeared to others. Id. at ¶ 83.

Evans had observed no other instances of Schaeper giving similar criticism to Caucasian employees who had "the same determined look" on their faces while interacting with Schaeper. Id. at ¶ 84. This led Evans to believe that Schaeper was joking, so she replied with a tongue-in-cheek "Yay!" Id. at ¶ 86. Schaeper was offended by this, chastising Evans that this was "her job." Id. Schaeper told Evans that she expected Evans to appear happy to be at work, and happy to be chosen for the position. Id. at ¶ 88. According to Evans, no Caucasian employee had been told the same. Id. at ¶ 89.

After further back and forth, where Evans pushed back on what type of facial expression she ought to have to show that she was engaged, Schaeper replied, "If you're going to be like this, I just don't know about this!" Id. at ¶ 90-92. Schaeper noted that in the earlier meeting, Evans had not been smiling, and had been on her phone texting. Id. at ¶ 94-96. Evans responded that her son had been injured and she needed to check on him. Id. at ¶ 96. Evans also noted that Schaeper had been on her phone as well, and no one had been smiling in that meeting. Id. at ¶ 95-97. Shortly thereafter, Evans's shift ended, and she left for the day, with tensions still high. Id. at ¶ 101-103.

The next day, on July 18, Evans came into work and realized that Schaeper had come in early because of her. Id. at ¶ 104-106. Evans was invited to a "Week One Review Meeting" with Schaeper and a HR representative, at which Schaeper did all the talking. Id. at ¶ 107-109. Schaeper said that Hillman had a culture of being happy at work, and observed that Evans did not appear happy there. Id. at ¶ 110. Schaeper cited Evans "slouching" and "having her phone out" during meetings, her head "drooping" during training, and stated that Evans had never asked questions Id. at ¶ 112-115. Evans responded that Schaeper had also had her phone out during meetings, that her head had not drooped, but simply leaned in to observe Schaeper's work, and she asked what she perceived to be an unusual number of questions. Id. at ¶ 113-117.  Finally, Schaeper said that Evans's employment was terminated. Id. at ¶ 121. Evans commented to the HR representative that she "felt her termination was wrong and discriminatory." Id. at ¶ 122. The HR representative did not appear to take this seriously. Id.

Evans brings claims for race discrimination arising from the termination of her employment under Ohio Revised Code § 4112.02(a) ("Unlawful Discriminatory

4

Practices") (Count I), Title VII of the Civil Rights Act of 1964 (Count II), and Ohio Revised Code § 4112.02(j) ("Unlawful Aiding, Abetting, and Inciting of Discrimination") (Count III).

Defendants argue that under Federal Rule of Civil Procedure 12(b)(6), Plaintiff has failed to state a plausible claim of race discrimination under either federal or Ohio law. Defendants also argue Schaeper could not have aided and abetted herself in violation of Ohio Revised Code § 4112.02(j).

II. **ANALYSIS**

### A. Standard of Review

In order to survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A plaintiff's claim has this baseline plausibility if the facts stated therein "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. The standard set forth by the Supreme Court in *Twombly* and *Iqbal* requires "more than a sheer possibility" that the defendant is liable, but a claim need not rise to the level of probability. *Id*.

### B. Race Discrimination

Under Title VII, an employer may not "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1). Similarly, Ohio law forbids an employer "to discharge without just cause, to refuse to hire, or otherwise to discriminate against [a] person with respect to hire, tenure, terms, conditions, or privileges of employment, or any matter directly or indirectly related to

5

employment." Ohio Rev. Code § 4112.02(A).

A plaintiff pursuing race discrimination claims under Title VII and Ohio Revised Code § 4112.02 may prevail in one of two ways: by presenting either direct or indirect evidence to prove that his or her employer was motivated by a race-based animus when it took an adverse employment action against the plaintiff. *Jones v. Kilbourne Med. Labs.*, 162 F. Supp. 2d 813, 824 (S.D. Ohio 2000). To survive a motion to dismiss, the plaintiff need not establish a prima facie case under the *McDonnell Douglas/Burdine* burden-shifting framework for indirect evidence of race discrimination. *Keys v. Humana, Inc.*, 684 F.3d 605, 609-610 (6th Cir. 2012); *see also Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510 (2002) ("The prima facie case under *McDonnell Douglas* ... is an evidentiary standard, not a pleading requirement."). However, the plaintiff must allege sufficient "factual content" from which a court, informed by its "judicial experience and common sense," could "draw the reasonable inference," that the defendant discriminated against the plaintiff because of his or her race. *Keys*, 684 F.3d at 610 (quoting *Iqbal*, 556 U.S. at 678, 679, 129 S.Ct. 1937).

Defendants argue that the following allegations are insufficient to support a claim of race discrimination: (1) Schaeper's use of the word "girl" on three occasions when speaking to Evans; (2) Evans's predecessor was placed on a performance improvement plan but Evans was terminated without any progressive discipline; and (3) Evans's disagreement with Schaeper's perception of her as being "bored" and "unhappy" with her job at Hillman.

Evans claims that Schaeper's use of the word "girl," had racial connotations. Compl. at ¶ 29. The Court notes that the Supreme Court has held that the use of the

6

word "boy" to refer to African-American male plaintiffs has racial undertones that may be evidence of an employer's racial animus, "depend[ing] on various factors including context, inflection, tone of voice, local custom, and historical usage." *Ash v. Tyson Foods, Inc.*, 546 U.S. 454, 456 (2006).[1] Therefore, it is plausible that the same factors could support a finding of racial animus where a Caucasian supervisor refers to her older, African-American employee as "girl."

As evidence of disparate treatment, Evans alleges that Hillman placed her predecessor, a Caucasian male, on a performance improvement plan, but terminated her without any prior progressive discipline. Compl. at ¶ 49-51. To support a finding of disparate treatment, the Sixth Circuit has determined that the plaintiff and the other employees in question be similar in "all relevant aspects." *Martin v. Toledo Cardiology Consultants, Inc.*, 548 F.3d 405, 412 (6th Cir. 2008). This means that the two employees "must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir. 1992).

Defendants argue that Evans's predecessor was terminated for poor performance,

---

[1]This determination is better suited for a later stage in the litigation. Accordingly, in *Wash v. Quest Diagnostics, Inc.*, a case cited by Defendants, the court determined that the plaintiff had not provided evidence that her supervisor's reference to her as "hey, girl" actually related to her race. Case No. 08-61863-CIV, 2010 WL 11504202, at *24 (S.D. Fla. June 29, 2010), *report and recommendation adopted*, No. 08-61863-CIV, 2010 WL 11504206 (S.D. Fla. July 22, 2010). The court concluded that even if the phrase were a derogatory remark directed at the plaintiff based on her race, the defendant was entitled to summary judgment on Plaintiff's hostile work environment claim because use of the phrase does not describe conduct that is severe or pervasive enough to be actionable under Title VII. *Id.* The court also found that the supervisor's use of the phrase "hey, girl" could not constitute direct evidence of discrimination because there was evidence in the record that the supervisor used it to refer to individuals outside of the plaintiff's protected class. *Id.* at *17, n.23.

but Evans was terminated for Scheper's perception that Evans had a negative attitude and was disengaged. Plaintiff alleges that her predecessor had "messed up" the job for a year and a half, to the point where it "substantially interfered" with Hillman's business dealings. Compl. at ¶ 45. That conduct seems to be more severe than Evans's alleged behavior, which amounted to no more than a perceived attitude problem and a mistyped name on an email. If Evans's predecessor performed much worse than she did, but was put on a performance improvement plan and was allowed to stay in his role for eighteen months, that would indicate disparate treatment of two similarly situated employees.

Finally, Defendants argue that Evans's disagreement with Schaeper's perception of her as being "bored" and "unhappy" with her job at Hillman cannot support a claim of race discrimination. In addition, Defendants point out that Schaeper was the same person who hired her.

This case is before the Court on a Rule 12(b)(6) motion, therefore this Court must (1) view the complaint in the light most favorable to the plaintiff and (2) take all well-pleaded factual allegations as true. *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (citing *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009)). In the Complaint, Evans alleged that she had "a look of serious intent to learn the process," and did not "look[ ] bored" or like she did not "want to be [t]here." Compl. at ¶ 78-82. At this stage of the litigation, this Court must accept these allegations as true.

Similarly, this Court finds that the same actor inference is not applicable at this stage of the litigation. The same actor inference holds that "when the same person who hired the plaintiff also fired the plaintiff...a presumption can arise that an employee's race did not motivate the termination because the sort of person who would discriminate

8

against a particular race would not also hire someone of that race." *Garrett v. Southwestern Med. Clinic*, 631 Fed.Appx. 351, 355 (6th Cir. 2015). Although the factfinder is permitted to draw this inference, the Sixth Circuit has explained that it is by no means a mandatory one, and it may be weakened by other evidence. *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 573 (6th Cir. 2003) (citing *Buhrmaster v. Overnite Transp. Co.*, 61 F.3d 461, 464 (6th Cir.1995)); *see also Gaglioti v. Levin Grp., Inc.*, 508 F. App'x 476, 483 (6th Cir. 2012) (explaining that "as *Wexler* makes clear, the same-actor inference cannot be an independent reason to grant summary judgment where there are other disputes of material fact").

Therefore, Defendants' Motion to Dismiss Plaintiff's claims for race discrimination under Ohio Revised Code § 4112.02(a) and Title VII is DENIED.

### C. Ohio Revised Code § 4112.02(J)

Ohio Revised Code § 4112.02(J) makes it unlawful for any person to "aid, abet, incite, compel, or coerce the doing of any act declared by this section to be an unlawful discriminatory practice." Plaintiff brings this came solely against Defendant Schaeper.

Section 4112.02(J) imposes liability on a "person" as opposed to an "employer." *Bower v. MetroParks of Butler Cty.*, Case No. 1:18-CV-00791, 2019 WL 2772544, at *8 (S.D. Ohio July 2, 2019), *report and recommendation adopted*, Case No. 1:18CV791, 2019 WL 4097228 (S.D. Ohio Aug. 29, 2019). Ohio courts generally define "aid" as "to assist" and "abet" as "to incite or encourage." *Luke v. City of Cleveland*, Case No. 1:02CV1225, 2005 WL 2245187, at *8 (N.D. Ohio Aug. 22, 2005) (citing *Horstman v. Farris*, 132 Ohio App.3d 514, 527, 725 N.E.2d 698 (Ohio Ct. App.1999)). As one Ohio court has explained, an individual is an aider and abetter if he "knowingly does something

which he ought not to do ... which assists or tends in some way to affect the doing of the thing which the law forbids." *Id*. (citing *State v. Stepp*, 117 Ohio App. 3d 561, 568 (Ohio Ct. App. 1997).

Although an employee cannot aid and abet herself, an employee might be found individually liable under § 4112.02(j) for aiding, abetting, inciting, compelling, or coercing the unlawful employment practices of her employer. *Siwik v. Cleveland Clinic Found*., No. 1:17CV1063, 2019 WL 1040861, at *27 (N.D. Ohio Mar. 5, 2019). To be held liable for aiding and abetting under this provision, that employee must be "involved in or actually [have] made the decision to [discriminate or] retaliate against [the employee]." *Oster v. Huntington Bancshares Inc*., Case No. 2:15-CV-2746, 2017 WL 2215462, at *22 (S.D. Ohio May 19, 2017) (quoting *Cummings v. Greater Cleveland Reg'l Transit Auth*., 88 F. Supp. 3d 812, 820 (N.D. Ohio 2015)). For example, in *Bower v. MetroParks of Butler County*, this Court found that a § 4112.02(J) claim against the plaintiff's supervisor should not be dismissed on a motion to dismiss where the plaintiff alleged that the supervisor refused to accommodate his disability, undermined his job performance, prepared a "sham performance review" to justify recommending his termination and informed plaintiff that he would be terminated if he refused to sign the review. Case No. 1:18-CV-00791, 2019 WL 2772544, at *8 (S.D. Ohio July 2, 2019), *report and recommendation adopted*, No. 1:18CV791, 2019 WL 4097228 (S.D. Ohio Aug. 29, 2019); *see also Woodworth v. Time Warner Cable, Inc*., No. 1:15 CV 1685, 2015 WL 6742085, at *3 (N.D. Ohio Nov. 2, 2015) (allegations support claim under § 4112.02(J) against non-supervisory employee where that employee refused to issue a hard hat which prompted the decision to terminate plaintiff and replace him with a younger employee).

Here, Evans alleges that "Schaeper aided, abetted, incited, coerced, and/or compelled Hillman's discriminatory termination of Plaintiff." Compl. at ¶ 154. Evans states that on her final day of work, she was invited to a "Week One Review Meeting" with Schaeper and Mark Weber, who is Hillman's HR business partner. Id. at ¶ 25, 107-108. Evans alleges that throughout the discussion, Weber remained quiet and allowed Scheper do all the talking. Id., at ¶ 109. Evans alleges that Schaeper ended the discussion that "they were going their separate ways." Id., at ¶ 121. The Court concludes that these allegations, accepted as true, are sufficient to support a finding that Schaeper "aided, abetted, incited, compelled and/or coerced discriminatory treatment" by Evans's employer, Hillman.

### III. CONCLUSION

Based on the foregoing, Defendants' Motion to Dismiss (Doc. 11) is **DENIED**.

**IT IS SO ORDERED.**

                             */s/ Michael R. Barrett*
                             Michael R. Barrett, Judge
                             United States District Court