**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | | |
|---|---|---|
| ERAN EVANS, | : | Case No: 1:20-cv-00041 |
| | : | |
| Plaintiff, | : | Magistrate Judge Stephanie K. Bowman |
| | : | |
| vs. | : | **REPLY MEMORANDUM IN SUPPORT** |
| | : | **OF DEFENDANTS' MOTION FOR** |
| THE HILLMAN GROUP, INC., et al. | : | **SUMMARY JUDGMENT** |
| | : | |
| Defendants. | : | |

### I. Introduction.

This case involves dueling perceptions, and the difference between them bears legal significance for this Court's analysis at summary judgment.

The first point-of-view is that of Defendant Tia Schaeper, Plaintiff Eran Evans' manager during her employment with Defendant The Hillman Group, Inc. ("Hillman") (collectively with Schaeper, the "Defendants"). Schaeper, who hired Plaintiff immediately following the energy and excitement she exuded during an in-person interview (thus aware of her race), subsequently perceived the same individual after only three days of work as disengaged and disinterested in her position. Schaeper communicated these concerns to and sought advise from her then-manager, Jason Cornett. Though Schaeper never asked that Plaintiff's employment end based on her concerns, Mr. Cornett and Kim Corbitt, Hillman's then-Chief Human Resources Officer, ultimately decided to terminate Plaintiff's employment rather than pursue an employment relationship further. Importantly, neither Mr. Cornett or Ms. Corbitt (who, contrary to Plaintiff's claim, is also Black) met Plaintiff or knew her race. In other words, Plaintiff claims that two individuals who did not know her race—one of whom is also Black—discriminated against her because of her race. No reasonable jury would agree.

The second point-of-view is that of Plaintiff herself. Plaintiff disputes Schaeper's perception of her work ethic and behavior and, alternatively, perceived certain alleged body language by Schaeper and words she allegedly used as evidence of race discrimination, which Schaeper disputes. The difference between these perceptions is that Schaeper's establishes a legitimate, non-discriminatory reason for Plaintiff's termination—the only burden Defendants bear. Moreover, even if Schaeper's perception was wrong, such a mistake does not give rise to a Title VII violation. Conversely, Plaintiff—who bears the ultimate burden of persuasion with respect to her claims in this action—cannot rely on her subjective beliefs and unconfirmed opinions to claim race discrimination and survive summary judgment.

Yet aside from numerous mischaracterizations of the record evidence, subjective interpretations are all Plaintiff offers the Court in her *Brief in Opposition to Defendants' Motion for Summary Judgment* (the "Opposition") (ECF No. 37). Plaintiff claims that genuine disputes of material fact exist based solely on her own subjective perceptions of various alleged events and her self-serving and uncorroborated testimony that such events occurred, as well as how she chose to interpret those events. This Court's jurisprudence is clear that such "evidence" is insufficient to survive summary judgment. As such, Plaintiff's Opposition fails to present anything from which a reasonable jury could find in her favor, and this Court should therefore grant summary judgment to Defendants on all claims.

**II.     The Only Pending Dispute Is Whether There Exists Evidence of Pretext.**

Plaintiff begins her Opposition by: (1) arguing that she does not need to navigate the *McDonnell-Douglas* burden-shifting framework because Schaeper's alleged us of the word "girl" constitutes direct evidence of discrimination; and (2) disputing the "legitimacy" of Defendants'

proffered non-discriminatory reason for terminating her employment. (Opp., ECF No. 37, at PageID #618-22). Both arguments lack merit.

First, the word "girl," as allegedly used in this case, is not direct evidence of race discrimination. "[I]n Title VII cases, direct evidence 'is evidence that proves the existence of a fact **without requiring any inferences**.'" *Burke-Johnson v. Dept. of Veterans Affairs*, 211 Fed. Appx. 442, 451 (6th Cir. 2006) (quoting *Grizzell v. City of Columbus Div. of Police*, 461 F.3d 711, 719 (6th Cir. 2006)) (Emphasis added). It must be evidence that is "**free of inferences** and that, if believed, requires a finding that 'unlawful discrimination as at least a motivating factor in the employer's actions.'" *Halfacre v. Home Depot, U.S.A., Inc.*, 221 Fed. Appx. 424, 428 (6th Cir. 2007) (quoting *Amini v. Oberlin Coll.*, 440 F.3d 350, 359 (6th Cir. 2007)) (Emphasis added). Plaintiff herself admitted that the word "girl" has no racial animus or connotation but rather the context in which it is used can make it offensive:

> Q. You would agree with me that the world "girl" by itself in a vacuum is not derogatory or otherwise racially insensitive, correct?
>
> …
> A. By itself?
>
> Q. Yes.
>
> A. No. I believe it is used to refer to girls.
>
> Q. Right…. The contention isn't that the word "girl" itself is derogatory. It's the way that – if its used in a certain way can be derogatory, correct?
>
> A. Well, I think for me, my mom can call me girl, but I wouldn't call another woman girl.
>
> Q. It's the context[,] It's the person who's saying it[,] It's the way that the word is used, the tone that is used, the context in which it was used could make it derogatory, correct?

3

        A.      Could, yes.

(Deposition of Eran Evans ("Evans Dep."), ECF No. 27, at 34:8-35:2).

In other words, Plaintiff relies on **inferences** to claim that the alleged use of the word "girl" is evidence of race discrimination. Such **circumstantial** evidence is the antithesis of direct evidence, and Plaintiff cannot rely on that word to claim the *McDonnell-Douglas* framework does not apply.

Second, Plaintiff's dispute over the legitimacy of Defendants' proffered non-discriminatory reason for her termination does not preclude Defendants from meeting their reciprocal burden under *McDonnell-Douglas*. The requirement that an employer articulate a legitimate non-discriminatory reason for the subject adverse action is "merely a burden of production, not of persuasion, and it does not involve a credibility assessment." *Upshaw v. Ford Motor Co.*, 576 F.3d 576, 585 (6th Cir. 2009). *See also Bd. of Trustees of Keene State Coll. v. Sweeney*, 439 U.S. 24, 25 fn. 2 (1978) (noting that "the employer's burden is satisfied if he simply 'explains what he has done' or 'produces evidence of legitimate nondiscriminatory reasons.'"). In arguing that Defendants' stated reason for her termination—Plaintiff's perceived lack of engagement and interest in her position—is not "legitimate" because she disagrees with Defendants' perception of her work behavior, Plaintiff truly argues that it was not the *real* reason. (Opp., ECF No. 37, at PageID #620-22). That is a **pretext** argument. Defendants have produced evidence of a legitimate, non-discriminatory reason for Hillman's termination decision, and thus the burden shifts back to Plaintiff to persuade the Court through competent evidence that this reason is pretext for discrimination.

**III. There is No Genuine Dispute of Material Fact Which Calls into Question the Legitimate Nature of Defendants' Reason for Terminating Plaintiff's Employment.**

When the entirety of the record in this case is viewed in a light most favorable to Plaintiff, the Court can only conclude that it offers nothing from which to find a genuine dispute of material fact as to whether Defendants' stated reason for terminating Plaintiff's employment is pretext for discrimination. As such, there is nothing for a jury to decide and summary judgment in Defendants' favor is therefore warranted.

**A. Plaintiff Cannot Survive Summary Judgment on Her Unsupported, Self-Serving Deposition Testimony.**

Plaintiff's Opposition primarily contends that fact issues exist because her deposition testimony contradicts that of the other witnesses in this case. Specifically, Plaintiff argues that, *inter alia*, Defendants discriminated against her because of her race because—based solely on her own testimony—she disputes Schaeper's perception of her body language and tone, and because Schaeper allegedly called her "girl" on three separate occasions. (Opp., ECF No. 37, at PageID #622-26). Plaintiff offers **nothing** other than her own testimony to support those contentions.

It is axiomatic and well-settled in that "unsubstantiated, self-serving assertions will not preclude an adequately supported motion for summary judgment from being granted." *Mosquera v. MTI Retreading Co.*, 745 Fed. Appx. 568, 573 (6th Cir. 2018) (citing several cases). *See also Stein v. Ashcroft*, 284 F.3d 721, 726 (7th Cir. 2002) ("Bald and self-serving assertions…unsubstantiated by any documentation or other testimony, are not sufficient to create a material issue of fact…."); *Smith v. Sw. Bell Tel. Co.*, 456 Fed. Appx. 489, 492 (5th Cir. 2012) ("[W]e have repeatedly held that self-serving statements, without more, will not defeat a motion for summary judgment, particularly one supported by plentiful contrary evidence."). Accordingly, Plaintiff cannot survive summary judgment simply because she testified contrarily to what is

5

presented by other record evidence. To hold otherwise would permit any plaintiff to avoid summary judgment by doing nothing other than disagreeing with the other witnesses. Plaintiff was required to present evidence other than her uncorroborated testimony to support her claims, which she has failed to do.

### B. Plaintiff's Speculative, Unsupported, and Subjective Belief that Race Discrimination Occurred Cannot Survive Summary Judgment.

As outlined in detail in Defendants' Motion for Summary Judgment (ECF No. 30) (the "Motion"), which is incorporated by reference as if fully rewritten here, Plaintiff's only basis for claiming she suffered discrimination because of her race is her own unconfirmed opinions and subjective interpretation of events. This is not evidence capable of defeating a summary judgment motion. *See Campbell v. Nally*, No. 2:10-cv-1129, 2012 U.S. Dist. LEXIS 141364, *18 (S.D. Ohio Oct. 1, 2012) ("Without more, Campbell has arguably provided nothing more than his own subjective belief that he was unlawfully discriminated against. But neither general assertions of discrimination nor an unsubstantiated belief of discrimination are enough to overcome summary judgment.") (citing *Woythal v. Tex-Tenn Corp.*, 112 F.3d 243, 247 (6th Cir. 1997)); *Adebisi v. Univ. of Tennessee*, 341 Fed. Appx. 111, 113 ("A plaintiff's 'conclusory allegations and subjective beliefs…are wholly insufficient evidence to establish a claim of discrimination as a matter of law.'") (quoting *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 585 (6th Cir. 1992)).

### C. The Term "Girl," Even if Used, Does Not Create a Genuine Issue of Material Fact as to Pretext.

Plaintiff's only evidence of race discrimination is her claim that Schaeper called her "girl" on three separate occasions, which Plaintiff interpreted as a reference to her race. But even if Schaeper had referred to Plaintiff as "girl," as Plaintiff claims, that is not pretext for discrimination. The only evidence connecting the word with race is Plaintiff's own subjective opinion of how the

6

word should be interpreted. (*Id*. at 32:12-33:3, 50:3-52:5, 71:1-72:13). Indeed, Plaintiff was never "sure" if the reference was associated with her race:

> Q. [I]s it your opinion that in referring to you as "girl," or by the word "girl," that Ms. Schaeper was doing so in a racially offensive way?
>
> A. I thought so, but wasn't sure at the time.

(*Id*. at 33:15-18). She also never raised the issue with Schaeper or otherwise confirmed her subjective interpretation. (*Id*. at 31:9-23, 32:12-33:18, 36:15-37:13, 50:23-52:5, 70:1-71:5, 71:18-72:1). Schaeper's undisputed testimony is that she generally uses the term "girl" when interacting with coworkers. (Defs.' Proposed Undisputed Facts ("PUF"), ECF No. 30-1, at ¶ 40).[1] Plaintiff cannot survive summary judgment simply by claiming she "thought" or "believed" that the word "girl," as allegedly used with her, "might" be referencing her race.

### D. The "Same Actor Inference" Applies and There is No Evidence to Otherwise Contradict Schaeper's Motivations and Conduct.

Plaintiff also argues that the "same actor inference" should not apply in this case because "Schaeper expressly testified she did not make the decision to terminate Evans' employment" and "[t]hus, 'the hirer and the firer' are not the same individual." (Opp., ECF No. 37, at PageID #626) (Emphasis in original). But the fact that Schaeper may not have made the ultimate decision to terminate Plaintiff's employment does not preclude the inference's application.

It is undisputed that Schaeper communicated her concerns to her manager, Jason Cornett, and that Mr. Cornett, in tandem with Kim Corbitt (Hillman's then-Chief Human Resources Officer), decided to end Plaintiff's employment. (Defs.' Proposed Undisputed Facts ("PUF"), ECF No. 30-1, at ¶¶ 33-35; Pl.'s Resp. to PUF, ECF No. 36, at ¶¶ 33-35). It is further undisputed that

---

[1] In her Opposition, Plaintiff argues that "she never heard Schaeper refer to any of the Caucasian women on the team as 'girl.'" (Opp., ECF No. 37, at PageID #618). This evidence is nowhere in the record. While Plaintiff cites as support her own deposition testimony (ECF No. 27) at PageID #171, the testimony therein does not support this contention.

7

Plaintiff never interacted with Mr. Cornett or Ms. Corbitt. (Evans Dep., ECF No. 27, at 67:1-5; Schaeper Dep., ECF No. 28, at 94:2-4; Deposition of Mark Weber ("Weber Dep."), ECF No. 29, at 25:6-8). Therefore, Plaintiff's argument is that Hillman is liable to her on a "cat's paw" theory: Plaintiff reasons that Cornett and Corbitt—having never met her—lacked any discriminatory motivation for terminating her employment but were instead influenced to so by Schaeper, whom Plaintiff claims possessed such motive.

The principles and logic underscoring the "same actor inference" still exist in this scenario. The inference provides that where one individual decides to hire someone in a protected class and is subsequently responsible for their termination only a short time later, discriminatory animus likely did not motivate the decision. Even if Schaeper lacked final authority to terminate Plaintiff's employment, Cornett and Corbitt relied solely on the information she provided in making that personnel decision. Therefore, Plaintiff's theory still requires that Schaeper possessed discriminatory animus in voicing her concerns to her superior. Courts have applied the "same actor inference" in such situations. *See, e.g., Voltz v. Erie Cty.*, 617 Fed. Appx. 417, 425-26 (6th Cir. 2015); *Li v. Jiang*, 164 F. Supp. 3d 1012, 1021 (N.D. Ohio 2016).

Moreover, the record evidence completely refutes Plaintiff's argument that Schaeper possessed discriminatory animus toward her. After interviewing Plaintiff **in person**, Schaeper immediately[2] asked Cornett, her direct supervisor, and Mark Weber, Hillman's HR Business

---

[2] In Plaintiff's Response to the PUF, Plaintiff disputes that Schaeper requested that Mark Weber, Hillman's HR Business Partner, make Plaintiff a job offer on the same day as her interview because, according to Plaintiff, "[n]othing in the record indicates this [request] was sent on the same day as Evans' interview, let alone 'immediately following' her interview." (ECF No. 36, at ¶ 8). This argument is flawed. It is undisputed that Plaintiff interviewed with Schaeper in person on June 12, 2019. (PUF, ECF No. 30-1, at ¶ 4; Pl.'s Resp. to PUF, ECF No. 36, at ¶ 4). Further, the e-mail Schaeper sent to Weber wherein she requests an offer be extended **is dated June 12, 2019**. (ECF No. 30-1, at PageID #527). With respect to whether Schaeper's request came "immediately after" the interview, Schaeper sent Weber the request at 11:16 a.m. on June 12, 2019, and the only record evidence regarding the duration of the interview indicates it lasted between 40 and 90 minutes. (Schaeper Dep. at 22:23-24; Weber Dep. at 12:21-22). It is implausible for Plaintiff to dispute the timing of this request when the entire record contradicts her attempt to do so.

Partner, to forego traditional interview practices and offer Plaintiff a job. (DPUF at ¶¶ 8-11). Had Schaeper harbored any discriminatory animus against Plaintiff because of her race, she could have easily selected one of the several Caucasian candidates she interviewed for the position. (*Id.* at ¶ 3). Instead, she chose Plaintiff. Schaeper also testified at length regarding her own observations of Plaintiff's work behavior. She was responsible for training Plaintiff and personally witnessed what she perceived as Plaintiff's disengagement and disinterest in her role. (*Id.* at ¶¶ 14-32). Schaeper wanted to inject energy and excited into her department following a period of low morale, and as such Plaintiff's outward demeanor gave her cause for concern. (*Id.* at ¶¶ 7, 17-32). And, when Schaeper communicated to Plaintiff her concerns with Plaintiff's body language, Plaintiff did nothing to alleviate those concerns. (*Id.* at ¶¶ 27-32). Most importantly, when Schaeper communicated these concerns to Cornett, **she did not request or recommend that Plaintiff's employment end because of them**. (*Id.* at ¶ 34). Rather, Cornett and Corbitt mutually—and without ever having met Plaintiff or knowing her race—concluded to end her employment of their own volition. (*Id.* at ¶ 35).

Even if Schaeper did not make the final decision to terminate Plaintiff's employment, her communicated concerns served as the sole basis for Hillman's decision. Because Schaeper hired Plaintiff (and did so enthusiastically) and separated her after only three days, this Court should apply the "same actor inference" to find no evidence of discrimination in the record. A reasonable jury similarly could not find in Plaintiff's favor when considering such facts.

### E. Plaintiff's Argument that Hillman Terminated Her for Not Conforming to Racial Stereotypes Must be Discarded as Both Unsupported and Untimely.

Plaintiff repeatedly refers to the makeup of Schaeper's team as an "entirely Caucasian" or "all-White" department to suggest that Schaeper discriminated against her for not acting the same

9

as her Caucasian coworkers. (*See* Opp., ECF No. 37, at PageID #604-606, 612-13, 622, 624-26). This argument has no basis in the record.

First, the racial makeup of Schaeper's team has no relevance to determining if Schaeper discriminated against Plaintiff. None of the other individuals on Schaeper's team had any decision-making or supervisory authority over Plaintiff. Further, another African American female had also worked on Schaeper's team, though Schaeper could not recall whether the employee's tenure overlapped with Plaintiff. (Schaeper Dep., ECF No. 28, at 15:3-16:1). Further, it is undisputed that Schaeper knew Plaintiff's race when she hired her into what Plaintiff now chooses to characterize as an "all-White Supply Chain Department" (Opp., ECF No. 37, at PageID #604). Again, had Schaeper harbored any discriminatory animus toward Plaintiff or other Black persons, she could have hired one of the four Caucasian candidates who applied and interviewed for the same position.

Second, there is no testimony—from Plaintiff, from Schaeper, from Weber, from anyone—regarding Plaintiff's purported inability to "conform" to alleged Caucasian stereotypes. Defense counsel asked Plaintiff at her deposition to identify all the reasons why she felt discriminated against during her employment with Hillman. Plaintiff offered a laundry list of reasons why she felt she had been wronged, but failing to conform to racial stereotypes was not one of them. (Evans Dep., ECF No. 27, at 13:2-18:24; 133:25-134:8). Moreover, there is no testimony (or even suggestion from Plaintiff in her Opposition) as to what the alleged stereotypes are – being engaged at work and appearing interested in one's job are not racial stereotypes. Plaintiff's baseless theory, made for the first time in response to Defendants' Motion, cannot be accepted. *See Desparois v. Perrysburg Exempted Vill. Sch. Dist.*, 455 Fed. Appx. 659, 666 (6th Cir. 2012) ("A plaintiff may not expand his claims to assert new theories for the first time in response to a summary judgment motion.").

### F. The Contents of the Supply Chain Planner Job Description is a Straw Man Argument.

Plaintiff at several points in her Opposition states that the reasons for her termination were not listed as expectations in her job description. (Opp., ECF No. 37, at PageID #606-607) (arguing the supply planner job description does not expressly require an employee "to sit upright in their chair while working, smile throughout the day, shake hands of fellow coworkers, or exhibit a passion or happiness for supply chain management," and that it also does not "require[] new employees to be 'overtly friendly,' shake hands, or ask questions about their coworkers' employment history with the company."). The illogical nature of this argument is patent on its face. Moreover, Defendants have already stated in their Motion that, for purposes of summary judgment only, they are not disputing Plaintiff's ability to establish her *prima facie* case. (Mot. for Summ. J., ECF No. 30, at PageID #463). This includes whether Plaintiff was qualified for her position. As such, whether Plaintiff could meet the requirements of her position as stated in her job description is irrelevant.

### G. Matt Baldwin and Plaintiff Are Not Comparators, and Any Disparate Treatment Between Them Does Not Preclude Summary Judgment.

Plaintiff's Opposition also includes passing references to Matt Baldwin, a Caucasian former Hillman supply planner whom Hillman placed on a performance improvement plan ("PIP") due to performance issues. (*See* Opp., ECF No. 37, at PageID #625). Plaintiff points to Mr. Baldwin to argue that the fact she did not receive progressive discipline prior to her termination is evidence of race discrimination. Not so. As discussed at length in Defendants' Motion (ECF No. 30, at PageID #468-69), the circumstances under which both Plaintiff and Mr. Baldwin found themselves are more dissimilar than alike. Specifically, Hillman placed Mr. Baldwin on a PIP because he suffered from deficiencies relating to job performance which were objective,

11

measurable, and curable, and the PIP provided him a path for improvement on these objective metrics:

> Q. Tell me what kind of performance issues was Matt [Baldwin] having?
>
> A. So you pulled up the job description earlier. There are many things listed on the job description that he was not meeting. So we measure a lot of metrics. So one of the things is the timeliness of when a supply planner cuts a purchase order, their timeliness of replies. There's a lot of personal metrics that it can tie to a planner that we can measure and he wasn't meeting those.

(Schaeper Dep., ECF No. 28, at 118:24-119:9). Further, notwithstanding these performance deficits, Schaeper testified that Mr. Baldwin was engaged in his job. (*Id*. at 120:15-17).

By contrast, Hillman did not terminate Plaintiff because of deficits in her ability to perform the essential functions of her position. Rather, it decided to terminate her because Schaeper did not believe the perceived issues relating to her attitude and disinterest in her position would improve. Moreover, even if the Court considered Plaintiff and Mr. Baldwin to be similarly situated, this fact only helps establish Plaintiff's *prima facie* case (which Defendants have already stated they do not argue against solely at this stage). It does not warrant finding pretext for race discrimination, especially given that Plaintiff not only lacks evidence of discriminatory animus in all respects and rests her entire case on personal perceptions and opinions, but also because Schaper: (1) personally hired Plaintiff with full knowledge of her race only one month earlier; and (2) did not request that Plaintiff be fired when she communicated her concerns to Cornett and Corbitt.

### H. Even if Schaeper's Perception of Plaintiff's Body Language was Wrong, that is Not Evidence of Race Discrimination.

Plaintiff also repeatedly disagrees with the contention that she appeared disengaged or disinterested in her job at Hillman. (Opp., ECF No. 37, at PageID #607-12, 623-25). But even if Schaeper incorrectly perceived Plaintiff's body language, that is not evidence of pretext. When an

employer reasonably and honestly relies on particularized facts in making an employment decision, it is entitled to summary judgment on pretext even if its conclusion is later shown to be 'mistaken, foolish, trivial, or baseless." *Chen v. Dow Chem. Co.*, 580 F.3d 394, 401 (6th Cir. 2009) (citing *Clay v. UPS*, 501 F.3d 695, 703 (6th Cir. 2007)). There is nothing in the record beyond Plaintiff's own self-serving disagreement (which is insufficient to create a genuine fact issue) to call into question the basis for Schaeper's perception of her body language or to otherwise suggest Plaintiff's race was the true reason Schaeper voiced her concerns to management or that Hillman terminated her employment.

## I. Hindsight Bias is Not Grounds for Denying Summary Judgment.

Plaintiff also complains she was not "given the chance" to improve at Hillman and that it was unfair for her to be separated after only three days of work. Importantly, however, Title VII and state anti-discrimination statutes "do not act as a 'super personnel department,' overseeing and second-guessing employers' business decisions." *Romano v. Hudson City Sch. Dist.*, 772 Fed. Appx. 258, 267 (6th Cir. 2019) (quoting *Bender v. Hecht's Dept. Stores*, 455 F.3d 612, 626 (6th Cir. 2006)). Plaintiff was not employed under a contract. Hillman therefore could have been terminated her on her first day at work, her fourth day at work, or after twenty years of work. Simply because Plaintiff feels she was not given a "chance" at Hillman is not grounds for a claim of discrimination. This Court's only question is whether sufficient evidence exists to call into question the reasons cited for Plaintiff's termination of employment. There is not a shred of evidence in this case that points to Plaintiff's race as the motivating factor for that decision. The "fairness," or lack thereof, of Plaintiff's employment ending after only three full days of work is not, by itself, grounds for liability.

13

### J. Kim Corbitt, the Ultimate Decisionmaker with Respect to Plaintiff's Termination, is Also Black.

As one final point of clarification with respect to Plaintiff's pretext arguments, Plaintiff suggests in her Opposition that Kim Corbitt, Hillman's former Chief Human Resources Officer, is Caucasian. (Opp., ECF No. 37, at PageID #612). Given that Plaintiff never met Ms. Corbitt (Schaeper Dep., ECF No. 28, at 94:2-4; Weber Dep., ECF No. 29, at 25:6-8) and her counsel never requested information regarding Ms. Corbitt's race during discovery (*See* Schaeper Dep. at 93:12-94:4; Weber Dep. at 24:14-25:11, 33:3-4; Hillman's Obj. and Resp. to Pl.'s First Interrogs. and Reqs. for Prod., attached to this Reply as **Exhibit A**) or deposed Ms. Corbitt, it is curious how Plaintiff concludes that Ms. Corbitt is Caucasian. Like the remainder of Plaintiff's case, Plaintiff once again makes an entirely erroneous, speculative, baseless, and incorrect assumption regarding race. In truth, Ms. Corbitt is Black. (*See* Declaration of Amanda Kitzberger, attached as **Exhibit B**, at ¶ 3). In other words, the individual who made the ultimate decision to terminate Plaintiff's employment was also Black, which only further undermines Plaintiff's claim of race discrimination.

### IV. Because There Is No Evidence of Discriminatory Animus on the Part of Schaeper, Plaintiff's Individual Liability Claim Should Also Be Dismissed.

Plaintiff's Opposition makes no argument in response to the arguments in Defendants' Motion for the dismissal of Plaintiff's aiding-and-abetting claim against Schaeper. (Mot. for Summ. J., ECF No. 30, at PageID #469). As stated in that Motion, because there is no evidence of discriminatory motive on the part of Schaeper, she could not have "aided and abetted" any alleged discriminatory action as a matter of law. Plaintiff's aiding-and-abetting claim (Count III) should therefore be dismissed.

**V.     Conclusion**

For all the reasons set forth in their moving papers and in this Reply, Defendants The Hillman Group, Inc. and Tia Schaeper respectfully request that the Court enter summary judgment in their favor on all claims asserted by Plaintiff Eran Evans and that it dismiss those claims with prejudice.

Respectfully submitted,

*/s/ Megan S. Glowacki*
Megan S. Glowacki (0086572)
Anthony P. McNamara (0093670)
THOMPSON HINE LLP
312 Walnut Street, Suite 1400
Cincinnati, Ohio  45202
Phone:  (513) 352-6700
Fax:  (513) 241-4771
Megan.Glowacki@ThompsonHine.com
Anthony.McNamara@ThompsonHine.com

*Attorneys for Defendants*

**CERTIFICATE OF SERVICE**

I certify that on March 24, 2022, I electronically filed the foregoing with the Clerk of the Court using the electronic filing system, which will send notification of such filing to counsel of record.

*/s/ Megan S. Glowacki*
Megan S. Glowacki
